No.

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 2 4 2026

CLERK, U.S. DISTRICT COURT
By _____
      Deputy

In the United States District Court

for the Northern District of Texas

Ft. Worth

Honesty L. Truth , plaintiff ,

v.

**4-26CV-211-0**

Parkery County Sheriff's Department , et al ., defendant ,
Parker County Sheriff Jessica Galvan , defendant ,
Parker County Jail , defendant ,
Willow Park Police Department , defendant ,
Willow Park Texas Constable, defendant
Officer Ryan Malwitz , defendant ,
Lieutenant Quincy Hamilton , defendant
Police Chief Daniel Franklin , defendant
Texas Department of Criminal Justice , defendant ,
Sargent Drake Sowders , defendant ,
Warden Audrey England , defendant ,
Captain Rogelio Montalvo , defendant ,
Sargent Griffin , defendant ,
Bryan Collier , defendant ,

No.

In the United States District Court

for the Northern District of Texas

Ft. Worth

Honesty L. Truth , plaintiff ,

v.

Parkery County Sheriff's Department , et al ., defendant ,
Parker County Sheriff Jessica Galvan , defendant ,
Parker County Jail , defendant ,
Willow Park Police Department , defendant ,
Willow Park Texas Constable, defendant
Officer Ryan Malwitz , defendant ,
Lieutenant Quincy Hamilton , defendant
Police Chief Daniel Franklin , defendant
Texas Department of Criminal Justice , defendant ,
Sargent Drake Sowders , defendant ,
Warden Audrey England , defendant ,
Captain Rogelio Montalvo , defendant ,
Sargent Griffin , defendant ,
Bryan Collier , defendant ,

Plaintiffs Original Petition

Count I. R.I.C.O.

Count II. Conspiring to Interfere with the Due Process

Count III. Violation of First Amendment

Count IV. Assault

Count V. Retaliation

Count VI. Malicious Prosecution under the Fourth Amendment

Count VII. False arrest / imprisonment

Count VIII. Violation of the Due Process Clause / 14th Amendment

Count IX. Violation of Miranda

Count X. Violation of the Fifth Amendment

Count XI. Violation of the Fourth Amendment

Count XII. Violation of the Eighth Amendment

Count XIII. Unlawful Detention

Count XIV. Bodily Harm, Extreme pain, loss of life , liberty and freedom in Violation of Fourth, Fifth , Eighth , and Fourteenth Amendment

Count XV. Cruel and unusual punishment under the Eighth Amendment

Count XVI. Violation of equal protection and due process under the Fourteenth Amendment

Count XVII. Assault

Count XVIII. Battery

Count XIX. Negligent Hiring , Training , and Supervision of Employees

Count XX. Negligent Implementation of Policy

Count XXI. Personal Injury

Count XXII. Excessive Force

Count XXIII. Denial of Access to the Court

Count XXIV. Threats of Terror

Count XXV. Harassment

Count XXVI. Violation of TDCJ Use of Force Policy

Count XXVII. Negligence

Count XXVIII. Gross Negligence

Count XXIX. Professional Negligence

Count XXX. Property Damage

Count XXXI. Common Law Assault and Battery

Count XXXII. Discrimination

Count XXXIII. Medical Malpractice

Count XXXIII.  Abuse of Process

Count XXXIV. Fraudulent Misrepresentation

XXXV. Tampering with Evidence

Cause of Action Relationship of Parties

On December 29 , 2021 the plaintiff Honesty L. Truth was travelling from Los Angeles , California back to her home in Miami , Florida when her black 2010 Mercedes Benz C300 stalled on the I-80 E expressway shoulder near the Quality Inn in Willow Park Texas. The plaintiff called the 911 operated requesting a motorists assist , eventually two Willow Park Police Department Officers were dispatched to assist the plaintiff with her car. While waiting on the dispatched officers to arrive, two civilians pulled over to the side of the expressway where the vehicle was disabled offering to allegedly help the minority woman get her car back started. All efforts between the police and the civilians to start the vehicle were done to no avail, Willow Park Police Department Brad Sims then adamantly suggested that the plaintiff go stay at the Quality Inn in Willow Park Texas for the night  As the night progressed into the early morning hours of December , 30 , 2021 Willow Park Police Department advised that the plaintiff leave her vehicle on the shoulder of the expressway, and considered getting a jump start or tow later in the morning. Willow Park Police Officers did not offer to take the plaintiff to the nearby Quality Inn, located directly off of the next exit, instead the advised she got into the car of one of the random civilians who stopped on the expressway shoulder at the point at which police would follow behind them to the hotel.

Please take judicial notice and review ( Exhibit 1 ) the motorist assist report pertaining to the plaintiff in Willow Park on December 30 , 2021

Before departing the scene of the motorists assist and following the plaintiff and civilians to the hotel, Willow Park Police Department did check the vehicle and

identification information of one of the two civilians who had stopped to allegedly help the plaintiff jump start her car. They failed to get the vehicle and identification information of the second civilian who also joined the plaintiff and first civilian at the Quality Inn.

When the plaintiff and civilians arrived to the Quality Inn in Willow Park Texas , Officer Brad Simms got out of his patrol car and met with the plaintiff and civilian one at before the plaintiff went inside the hotel entrance. The plaintiff checked into the Quality Inn at approximately one in the morning ( 1 am ) on December , 30 , 2021. She notified the civilians that they could stay the night, all she ask is that they help assist her with her car in the morning. Throughout the night the plaintiff called the 911 operator to see if Jason Spears or Brad Sims could check on her car as they had promised. The plaintiff was directed to call the non emergency line to do so.

Please take judicial notice and review ( Exhibit 2 ) screenshots of phone calls from the plaintiff to the non emergency line December , 30 , 2021

By 8:30 am December 30 , 2021 the plaintiff was being robbed of her deposit by one of the motorist assist civilians who's efforts were supported by the Quality Inn associate Amanda Ellis who quickly made a false allegation call to Willow Park Police about the plaintiff engaging in drug activities.

Approximately thirty minutes before Willow Park Police were dispatched to the Quality Inn , a 911 call was made by a witness by the name of Tobias Wilcox in reference to the plaintiffs vehicle. The plaintiff was unaware that a random civilian Tobias Wilcox had called 911 notifying the operator that he was witnessing a robbery and burglary on the plaintiffs 2010 Mercedes C300. The vehicle description and identity that Mr. Wilcox provided matched that of the civilian at the plaintiffs motorist assist encounter , who's vehicle and identification information was not ran. Willow Park Police Department Officers were dispatched to the scene of the vehicle burglary / robbery , dispatched officers included Officer Quincy Hamilton and Corporal Ryan Malwitz, both of whom responded to the plaintiffs Quality Inn call.

When Willow Park Police Department arrived they already had preconceived biases about the plaintiff , Ryan Malwitz called the plaintiff , " A Black Lives Matter" as soon as he saw the plaintiff , and when in route to the plaintiffs hotel room door , Quincy

Hamilton called the plaintiffs vehicle " A dope car ", at the point of interaction with the plaintiff, Willow Park Police Departments preconceived biases triggered a premeditated plan which cause Willow Park Police Department Captain Daniel Franklin to advise Quincy Hamilton to execute an arrest of the plaintiff prematurely.


Quincy Hamilton asked the plaintiff to come out of her hotel room, but she declined to do so, as she was attempting to record her interaction with police on her Instagram Live Feed because she was by herself in a rural part of Texas, afraid of what could happen next to her.

The defendants Willow Park Police Department, defendant, Captain Daniel Franklin, defendant, Corporal Ryan Malwitz, and defendant, Officer Quincy Hamilton admittingly violated the plaintiffs fourth amendment right to the United States Constitution because they did not procure a warrant prior to executing her arrest inside of the hotel room. Ryan Malwitz admitted during a suppression hearing for criminal prosecution that he did not admonish the plaintiff her Miranda rights, prior to the plaintiff rendering the statements that became the sole piece of evidence in her trial.


After defendant, Ryan Malwitz placed the plaintiff in his patrol car, he returned to her hotel room where they did not find any marijuana or marijuana paraphernalia, nor did they hint at any scent of marijuana while they were searching the room. Still defendant, Ryan Malwitz decided to book the plaintiff at the Parker County Texas jail.

In route to the defendant, Parker County Jail, the plaintiff noticed her vehicle was missing on the shoulder of the expressway where she had left it at. She inquired about her car and defendant, Ryan Malwitz notified her that it was towed because it was broken into. He stated that he tried to chase down the suspect but was unsuccessful. This was the first time the plaintiff became aware of the burglary. Scared for her life due to the horrific memories of stories about black women like Sandra Bland who was randomly found dead in Waller County Texas following a minor traffic stop and arrest, the plaintiff feared her life may too, become another log in the journal of tragic events that have occurred while civilians were in Police custody.


The plaintiff was later charged while in custody for retaliation due to a questionable statement rendered. Once the plaintiff was placed in defendant, Parker County Jails custody she was put in a holding cell by herself were she was later harassed by multiple officers. A day or two later she was placed in a solitary confinement cell. During her

incarceration at ,defendant , Parker County Jail , the plaintiff Honesty Truth spent sixteen of her eighteen total months at the facility in solitary confinement. She was without a television for over seven months. Officers would yell at her , throw trash at her , slam her cell window , watch her shower naked , not do wellness checks , refuse her toilet paper , assault her , commit unnecessary use of force's , take the phone from her , not give her rec , refuse her church services , and more.

Minimal grievances were responded to. Grievance that addressed racial barriers were ignored. Her mail was tampered with and withheld , somewhere between the District Attorney's office and defendant , Parker County Jail , the plaintiffs Discovery was tampered with and destroyed in order to prevent use in her criminal defense.

There came a point when the plaintiff had to grieve matters in emails , because the abuse would not stop , and most of her grievances weren't being responded to.

Please take judicial notice and review ( Exhibit 1 ) an email  The plaintiff became so afraid for her life in what she called a "racially divisive jail " that the email says she had a bulletproof vest and helmet shipped by Amazon to the Parker County Jail to be placed on her property so that she could ensure a safe departure from the facility. In the email she stated that, " They have failed to use any legal government documents to identify her. All government documents such as passports, State ID's , etc " would reflect her legal name. A name different than that which she was locked up under. She was not allowed to call herself by her legal name during pre-trial events. At her arraignment when she used her legal name she was challenged by Judge Craig Towson for doing so. The pre-indictment and arraignment documents did not reflect her legal name what so ever. During most of the pre-trial stages for over a year, her legal name was not used , there for meaning , the physical person was not being prosecuted under her identity. Birth certificates , identification cards sent from the Florida DMV , and social security cards were all provided and all of them were disregarded.

Please take Judicial notice and review ( Exhibit 4 ) a photo of the plaintiff Honesty L. Truth's drivers license provided by the Florida DMV.

In the email she stated that since entering Parker County Jail, she had been abused by medical personnel who had yelled at her , screamed at her , bullied her , tried to force her to draw blood for illegitimate reasons and more. Eventually she requested the footage of this abuse and negligence be revealed , however , those involved in the

request , defendant , Willow Park Police Department , defendant , Parker County Sheriffs Department , and non party criminal defense attorney John Stickels were all non responsive.

Please take judicial notice and review ( Exhibit 5 ) the " Filing a Police Report " email including defendants , Parker County Sheriff's Department , Willow Park Police Department , non defendant John Stickels , and non defendant Matthew Desarno of the Federal Bureau of Investigations

Prior to these emails the plaintiff had endured multiple counts of abusive conduct since entering defendant, Parker County Jail. On or around December , 31 ,2021 the first day the plaintiff was housed in the jail she was immediately placed in solitary confinement no disruption or disciplinary occurrence had accrued to warrant doing so. By around January , 19 , 2022 the plaintiff was still in solitary confinement without explanation and being harassed by multiple staff members often being incited by correction officer Kuwata. On this particular day , officer Kuwata influenced approximately six officers to bombard into the plaintiffs cell while she was not fully clothed, men were the majority of that number.

The officers came into the plaintiffs cell maliciously without clear intention other than to intimidate the plaintiff. These malicious and violent behaviors against the plaintiff continued by other staff members and nurses included. On February , 15 , 2022 the plaintiff was yelled at in medical for questioning why they wanted to draw her blood. Following her inquiry the plaintiffs head was slammed into the medical room door by officer Mason, chipping her tooth. At this point officer Mason had been involved with assisting with multiple acts of abuse. Earlier that day before slamming the plaintiffs head in medical , Mason had just viewed the plaintiff naked at cell F11. Footage of this occurrence was requested by the defendant responsible for jail surveillance, but never received. Later down the road on April , 7 , 2022 Officer Mason, Kuwata , and others went inside of the plaintiffs cell F11 destroying it and stealing multiple items including Nike socks. The April , 15 , 2022 email in ( Exhibit 3 ) titled "PCJ Security Grievance" also states that " on a camcorder video being held by Officer Walker at 5pm admitted to taking items" out of the plaintiffs room.

On 2/15/22 Parker County Jail nurse Cataline , who had been malicious towards the plaintiff before , misinformed that the blood draw was for psych purposes. She was then

corrected that the blood was being drawn for H and H due to nosebleeds that had been occurring before 1/11/22. The email addressed in ( Exhibit 3 ) stated that the plaintiff believed the nosebleeds were being " caused by the high stress levels in the jail due to discriminatory abuse . " There were a chain of medical discussions about the nosebleeds that continued to no avail or true remedy.

Please take judicial notice and review ( Exhibit 6 ) a copy of the plaintiffs medical request on 2/15/22 and medicals response.

Following the medical request , medical provided the plaintiff pills with no prescription. The doctor that provided the prescription was not a doctor from the medical department such as the provider Dr. Wusterhausen , it was a MHMR mental health doctor associated to Betty , Fair , and Associates, Dr. Swicegood. The plaintiff thought it would be best that she accepted the migraine prescription after consulting Dr. Swicegood about the issue in a regular follow up teleconference. The plaintiff thought that the doctors recommendation of the migraine prescription would be a justifiable reason for the medical department to fulfill the light-dimming request that the jail was undoubtedly capable of compromising to consider adjusting to particularly in a segregated cell like the plaintiffs.

The email in ( Exhibit 3 ) then states " On 3/21/22 there was medical request sent by the patient that said I have 6 medical requests dating back to 2/9/22 addressing a migraine issue being caused by too much bright light. On 3/11/22 , we concluded that a doctor went beyond you to allow migraine medicine after multiple denials and loops of my requests. Now that we've confirmed a need to deal with migraines. I ask again that Medical contact the jail highest ranks about my options to deal with this holistically by requesting to turn off one light in my cell. "

On 3/21/22 medical responded saying " Medical does not consent to having lights off due to history of migraines. "

Please take judicial notice and review ( Exhibit 7 ) a copy of the 3/21/22 medical request and response.

In response to the plaintiffs 3/21/22 medical request in ( Exhibit 7 ) the plaintiff followed up in a separate request on 3/22/22 saying " you said you are denying my light request but when I filed a grievance on 3/4/22 about lights the jail made an attempt to help. So why haven't you if my doctors office responded back with a medical record

history of migraines that date back to adolescent ages? Please forward all my medical requests to the jail superiors so they can be notified of your departments decision. Hopefully someone else can help."

On 3/23/22 medical responded saying " The provider stated no need for the security lights to be out either. That's where the chain of command stops. Sorry. "

Please take judicial notice and review ( Exhibit 8 ) a copy of the 3/22/22 medical request and response.

The email in ( Exhibit 3 ) also states that the plaintiff responded to the 3/22/22 medical request response in ( Exhibit 8 ) by following up in a separate medical request on 3/23/22.

Please take judicial notice and review ( Exhibit 9 ) a copy of the plaintiffs 3/23/22 medical request and response.

The medical request in ( Exhibit 9 ) asked , " 1) who is the provider 2) which light is considered the security light ? 3) is there any research addressing bright lights at a long period of time associated to migraines? "

Medical responded on 3/24/22 saying " I'm sure there is but that's something you can research when you are no longer incarcerated. "

The email in ( Exhibit 3 ) later mentions " on 4/7/22 at 5pm, not only was " the plaintiff " abused early that morning by Officer Kuwata , her room was trashed by other officers including Officer Mason. Several items were thrown and misplaced like her Tupperware , toothbrush and wash cloth. They will not offer her recreational time. They've refused her toilet paper. On the evening of 4/8/22 , Officer Kuwata threw trash at " the plaintiff. She was attacked by Officer Kuwata, and Officer Brown and had to run out of her room.

These acts of abuse are what prompted the plaintiff to provide a list of jail surveillance the criminal defense attorney's and defendant , Parker County Sheriff's Department needed to obtain in order to investigate if there were any constitutional infringements on the plaintiffs human rights committed by employees of defendant , Parker County Jail.

In an April , 19 , 2022 email from the plaintiff to her former criminal defense counsel , non party , John Stickels she stated " we are encouraging the FBI to do more research into Judge Graham Quisenberry because we believe he was associated in initially helping Officer Ryan Malwitz cover up this case with absolute negligence of information and misinformation provided to Parker County Courts. We are asking that you also investigate the Sheriff's Department whom we believe are helping Officer Malwitz and Judge Quisenberry who are all associated people who've initially tried to cover up this case.

Please take judicial notice and review ( Exhibit 10 ) the 4/19/22 email from the plaintiff to John Stickels.

When the plaintiff bonded out of Parker County Jail she went to the Parker County Sheriff's Department in late March 2022 reporting to Parker County Sheriff's Department Deputy Jessica Galvan, that she had been abused and would like the Parker County Jail surveillance during her thirteen month stay investigated.

Please take judicial notice and review ( Exhibit 11 ) a audio recording of the plaintiffs official report visit with Parker County Sheriff's Department Deputy Jessica Galvan.

The plaintiff had been in pursuit to obtain jail surveillance from 12/30/21 - 1/23/23 and more.

On 5 / 12 / 22 the plaintiff had family send an email from email account commandingchiefofficer@flyyhigh.com that was subjected " Filing A Police Report " it was sent to Russ.authier@parkercountytx.com a member or associate to defendant Parker County Sheriff's Department and police@willowpark.org an email account for defendant Willow Park Police Department.

Please take judicial notice and the review 5 / 12 / 22 email subjected " Filing A Police Report " in ( Exhibit 12 )

The plaintiffs May , 12 , 2022 email requested that police " report to jail to gather reports and evidence of hate crimes associated " to the plaintiff. The plaintiff asserted that

" (1) They have committed multiple acts of sexual harassment , employees involved correction officers.... Kuwata / Fountain / Mason / Furman / Taylor / Brown / Hopkins / Drew / Gaylean / Woodcock

(2) PCJ has committed multiple acts of inciting violence, committing acts of assault and organizing hate crimes. Employees involved: C. O. Kuwata / Brown / Mason / Taylor / Harter-Ray / Hopkins

Report to PCJ to begin police reports , view footage , and follow the justice process by arresting offenders on video committing above offenses ."

Nearly a month after the email in ( Exhibit 12 ) the plaintiff was a court ordered for a mental health evaluation, where she was ruled incompetent. The plaintiff was committed and not reevaluated for over 180 days. She remained in custody of defendant, Parker County Jail , in an abusive environment without competency restoration programs or services. On January , 23 , 2023 she was ruled competent.

On 5/12/22 the Parker County District Attorney's Office was also notified that the plaintiff would like to file a police report about the abuse in the jail.

On 5 / 19 / 22 the plaintiff sent out an email to LaSalle Corrections former Parker County Jail Assistant Warden J. Harris and LaSalle Corrections PREA department was carbon copied in it. No investigation occurred.

Please take judicial notice and review ( Exhibit 13 ) the 5/19/22 email to Parker County Jail Assistant Warden J. Harris.

The 5/19/22 email in ( Exhibit 13 ) stated that on 3/14/22 the plaintiff sent two grievances in. These grievances were never responded to , similar to most of the multi dozens of grievances the plaintiff attempted to file.

" One of those grievances addressed the issue of retaliation from the commissary department. After telling you in the 3/14/22 grievance that your wife Sgt. Harris interacted with me negatively on 1/23/22 approximately between 2 and 3 PM in relation

to a medical emergency regarding my blood spills from nosebleeds addressed by your medical department. That 3/14/22 grievance pointed you to the date and time that your wife laughed at my blood spills and then told me to clean it up myself. At which point and time I showed how much blood I was cleaning on the video camera in hallway F next to set cell 8. Before I address that , you moved Lyell away from a camera to F11 the same day that grievance was delivered. I do want to make sure those who are copied are aware of what else was addressed in 3/14/22 grievance "

The plaintiffs email in ( Exhibit 13 ) went on to say, " I had mentioned that officer Woodcock who works in commissary with your wife had also been appearing to use their commissary authority to retaliate against me for not allowing her to see me naked in the shower since 2/26/22. I pointed you in the grievance to video so you can see that I was in the shower and that Woodcock was turning her head tone extreme to look at me. Later it appears Woodcock now frustrated with something at that window. That same day of the 3/14/22 grievance addressing the above , Lt. Jarvis (female) accompanied Capt. Urby and Officer Sword to take everything out of my cell ( F,8) close to the video cameras and move my cell to an area away from camera view (F11). That activity occurred while officer Lucio had taken me to outside rec." Recreation time for the plaintiff was not permitted often.

The email stated " When I was brought back inside from rec I was accompanied by my hall boss Officer Lucio an officer I had previous issues with in connection to being attacked between dates 1/19 or 1/20 at 10:29pm and abused by ofc. Kuwata in the presence of ofc. Sword and someone I didn't know, Capt. Urby. The other person , Lt. Jarvis.

When I came back from outside rec I learned I was moved to another cell. So for the first time when I exited my room I ended up having a room that was flipped upside down that was taken out of one room and thrown into another. This occurred again on 4/7/22 when I went to church my cell was raided by ofc. Mason and ofc. Kuwata. "

The email continued " I am concerned that they were inside of my cell to look for the detailed notes that I keep in order to communicate things that have been happening inside of the jail. "

There were multiple occurrences of abuse on the plaintiff initiated by , defendant , Parker County Jail. a use of force spray was administered on her three to five times in a matter of weeks. Each time the spray was administered she was in her single cell, not

inflicting harm on her self or any other person. If she ever used the word racism, she could be sprayed.

At one point in time defendant Parker County Jail employee, Lt. Jarvis committed a use of Force on the plaintiff for no apparent reason at all. The use of force occurred in front of Officer Mason , who had been promoted to Sargent even though the plaintiff had reported multiple accounts of staff misconduct, prior to the promotion of various officers involved.

These acts of violence instilled fear into a minority woman who read stories of police violence on black and brown , and a woman who was personally televised going through police brutality herself, when she was tackled in the courtroom over a minor traffic citation for failure to use a turning signal which was later dismissed. The acts of violence she suffered in the 2015 video ultimately ruled favorable to her, however , it still happened, and that experience will forever be the reality that makes up minorities perspectives about government officials , the justice system , and our preconceived biases.

Please take Judicial notice and review ( Exhibit 14 ) a link to the video of the plaintiff being attacked previously by law enforcement, in a Kentucky courtroom on April , 14 , 2015

When the plaintiffs cell door was opened so she could throw away trash she was throwing away multiple boxes of the jails "Fresh Favorite " food from Chicken Express. Often times the plaintiff ordered two to four boxes of Chicken Express to be delivered to her cell on Tuesdays. It always appeared that guards would be upset about delivering the plaintiff her Chicken Express boxes or her Mr. Jim's Pizza boxes which she also regularly ordered. Some made habit to bring her commissary to her last , various acts of favoritism appeared to occur. On the day that Lt.Jarvis attacked the plaintiff, she was then assisted by  Sergeant Hobbs to take her down to the V-Tank where she would sit in a small padded room bare foot with no toilet access for hours.

Following that day the abuse continued but eventually lightened up. Before the Lt. Jarvis attack the plaintiff had went two months without a television upon being incarcerated. Her second month at defendant , Parker County Jail , after multiple private in cell visits from Lt. Jarvis at cell F8 , Jarvis agreed to give the plaintiff a television so that she could have something to do , or watch , like everyone else. The television was short lived and only lasted in the cell for a couple of days because it was removed on 2/15/22 when she was assaulted by officer Masoin in the Medical room incident mentioned earlier. Multiple people responded to that incident, but inside of the plaintiffs cell. They

were eager to take her TV from her as if she had done something wrong to be in that situation. When the plaintiff was brought into the cell she was forced on her knees when an officer removed her handcuffs after all electronics were removed from the cell. The plaintiff then went without a television for about another four or five months.

Lt. Jarvis' visits with the plaintiff abruptly ended. Later that year Warden King brought the plaintiff a television as an agreement that the plaintiff would stop addressing racial issues or any presence of racist ideologies observed in defendant, Parker County Jail. When the plaintiff was moved to the E4 and E5 cell side Officer Kuwata became more abusive at the plaintiffs door. She would walk up to the plaintiff while the plaintiff was on the phone with family and aggressively snatch the phone from the plaintiffs cubby hole. She did it so many times without being reprimanded that others began to do it too. The plaintiff felt she was spending so much money on the phone that it was embarrassing people that wanted to feel better than her. The plaintiff spent anywhere from one hundred to two hundred dollars a week calling families , friends , and associates. Trying to maintain her peace while in such a horrifically disturbing place that inflicted all types of culture shock and other harm.

The plaintiff sent emails about many of these issues, of course they occurred so often thought out the day everyday it was almost impossible to communicate all of them in emails because she only had access to a phone that guards were barely OK with her using.

She noted many things about her incarceration on note paper that the plaintiff may consider presenting in this hearing.

In January of 2023 the plaintiff posted bail and was able to depart defendant , Parker County Jail temporarily. While on bail she was able to get her car out of the impound lot contracted with defendant , Willow Park Police Department. Prior to exiting defendant , Parker County Jail, when the plaintiff was initially arrested and detained, the impound lot company notified her , she could not get her vehicle out of the impound lot because it was under a Police investigation. The reason for investigation was not clear , however prior to arriving to defendant , Parker County Jail, dash cam and body cam footage captured , defendant , Ryan Malwitz , notifying the plaintiff , that the reason her car was missing from the shoulder of the I-20 E. expressway was because a 911caller reported it being burglarized and the investigation led to the vehicle being impounded.

Other than that conversation between , defendant , Ryan Malwitz and the plaintiff , defendant , Willow Park Police Department never formally notified the plaintiff of this occurrence , nor is the plaintiff sure that a true and thorough investigation ever happened following defendant , Willow Park Police Departments response to the 12/30/21 911 call about the plaintiffs vehicle. Later the plaintiff learned that even though defendant , Willow Park Police Department had just issued a motorists assist on the plaintiffs vehicle seven hours prior to the plaintiff becoming a victim to an alleged burglary and theft , the defendant , Willow Park Police Department decided to " purge " the dash cam and body cam footage that could have been key evidence to assisting in apprehending the vehicle burglary / robbery suspect. Both the defendant , Willow Park Police Department and the 911 caller at the plaintiffs arrest , reported that the plaintiff was with multiple people from the point of the motorist assist to the hotel check in and reservation stay. The 911 caller associated to the plaintiffs arrest stated that the hotel reservation belonged to a John Paul , however , John Paul was not at the scene of the plaintiffs arrest. The plaintiff asserts that the 911 caller who reported the vehicle break in provided a suspect description that matched the exact physical and vehicle description of John Paul, one of the people present during the motorist assist who allegedly reserved the plaintiffs hotel room.

Defendant , Ryan Malwitz testified during the plaintiffs criminal proceeding that the Quality Inn hotel always provides Willow Park Police Department with video surveillance when incidents arise , however , for some reason , they were not able to obtain the surveillance of this particular night that led to the plaintiffs arrest. Defendant Ryan Malwitz also stated on body cam footage when in pursuit of the plaintiff, that there was a motorist assist associated to the plaintiff hours prior where apparently multiple civilians were present at the time of the interaction with , defendant , Willow Park Police Department. Defendant Willow Park Police Department officer Jason Spears testified that they " purged " the dash cam and body cam footage that likely caught on recording, a person and vehicle that matched the description provided by the 911 caller at the time of the plaintiffs vehicle burglary / robbery. Defendant Willow Park Police Department never attempted to interview the victim , plaintiff Ms. Truth , in regards to the information provided and whether she encountered or knew anyone that fit the description of the alleged suspect.

At this time the plaintiff Ms. Truth would like to assert that the description provided by witness Tobias Wilcox did match the physical person and vehicle description of a man whom she believes name is John Paul, the same name mentioned by the hotel employee Amanda. Ms.Truth asserts this same person and vehicle description provided

, matches the identity of one of the civilians present during the , defendant Willow Park Police Department motorist assist.

The plaintiff believes the defendant , Willow Park Police Department dash cam and body cam footage of the plaintiffs motorist assist was deleted in order to cover up that the reporting officers Brad Sims and Jason Spears did not gather identification information from both of the civilians present alongside Ms. Truth. Also because , One of the officers were very adamant about Ms. Truth leaving her car on the side of the I-20E and getting a hotel for the night at the Quality Inn. Ms. Truth asserts that one of the two officers suggested the hotel that she was later arrested at and had her call the Quality Inn, to see if they had rooms available for the night. Ms. Truth was in a city that was unfamiliar to her and this hotel was not visible from the area of the expressway where she was located, therefore she was not aware that she could potentially find lodging at the next exit until the officer suggested that location. The plaintiff then asserts dash and body cam footage would have shown the officer gathering the information of one of the civilians , but not the other. The unidentified person matches the description of the 911 callers suspect for the plaintiffs vehicle break-in.

During the motorist assist , the officers advised that Ms. Truth catch a ride to the Quality Inn with one of the two civilians. She recalls that the officers followed she and the civilians to the hotel and that one of those officer got out of his squad car at the hotel entrance area to exchange in another conversation with the plaintiff, and identified civilian, prior to the plaintiff paying for the reservation. The plaintiff recalls that because the officers did not get the second civilians identity, she asked him for his driver's license at the hotels front desk if  he planned to stay with them, that way his identity could be known in the case that any mishaps had occurred.

The plaintiff states once she was apprehended hours after checking in and minutes after her vehicle break in, defendant , Willow Park Police Department had no interest in solving the mystery that had occurred on the I-20E expressway. She was not notified of any investigatory information. She was not provided any paper work or updates. The impound lot was initially under the impression that the black Mercedes C300 did not belong to her. The owner identity matter was resolved in March of 2023. During the plaintiffs incarceration at defendant , Parker County Jail they refused to use her legal name on any documentation. The plaintiff had the Florida DMV mail a Florida State identification card to Parker County Jail as they promised to update her name in their system, however they did not. The plaintiff had Birth certificate and identification information sent to Parker County Courts they would not update her name in their

system even though they had no reason to call her by her dead name , because she had never had any legal encounters in the state of Texas. Even when the courts looked , they learned that the plaintiff has also been identified as her legal name Honesty L. Truth in Florida's judicial system.

In late March of 2023 after the plaintiff got her car out of the impound lot she went to report issues with the defendant Parker County Jail as well as a fraudulent attorney who had ran off with nearly five thousand dollars. This information was reported to defendant Parker County Sheriff's Department Deputy Jessica Galvan ,to the plaintiffs knowledge an investigation never occurred or if so , the plaintiff was never updated about it. Following that visit the plaintiff's bond was forfeited on 4/4/23 even after an employee of defendant, Parker County Sheriff's Department notified the plaintiff that her bond would not be forfeited when appearing at her April,4, 2023 court date.

Please take judicial notice and review ( Exhibit 15 ) a recording of the plaintiff and defendant Parker County Sheriff's Department at the April , 4 ,2023 court date.

Even though the bailiff told the plaintiff that her bond was no longer going to be forfeited for allegedly arriving to a 9AM court date that lasted until 12PM at allegedly 9:07AM central time. The plaintiff was still arrested and forced to forfeit her twenty thousand dollar bound. At the point of placing the plaintiff in defendant , Parker County Sheriff Department's custody, Sheriff's harassed her about whether or not her phone was recording the interaction once they removed it from her pocket and tried to go into it. The plaintiff was forced to sit in handcuffs opposite from any other person who may have been cuffed. While others cuffs were in front of them , the plaintiffs were behind her back the entire wait.

This was not the first time the plaintiff had been mistreated in the court holdover area. On multiple incidents prior , when Ms. Truth was originally in the custody of Parker County Jail almost every time she went to court she was harassed by Jail officials , particularly Officer Haliburton. She would be kicked out of the courtroom holdover area for no legitimate reason. She was always being bullied and humiliated in front of others waiting to appear before the court. They talked to her aggressively for being confident about her case. They did everything in their power to try to make her miss court dates. On April , 4 ,2023 when the plaintiffs bond was forfeited she saw defendant , Parker County Sheriff's Department Deputy Jessica Galvan again. Defendant , Jessica Galvan was one of the two people that had physically assaulted the plaintiff when she was back in Parker County's custody waiting to be taken to the jail. The plaintiff was escorted to defendant , Parker County Jail , by defendant , Deputy Jessica Galvan and

another female Sheriff's Department employee. The interaction was so aggressive that once they arrived at the jail, defendant, Parker County Jail employees held a camera to the plaintiff as she was brought in for booking. They always made a spectacle of the plaintiff.

Prior to bonding out of jail , defendant , Parker County Jail always escorted the plaintiff with normally three to four guards or more throughout the hallway. Due to violence that was happening at the plaintiffs cell , Parker County Jail put up a sign for guards to have a sergeant present when at the plaintiffs cell. Even though , Officer Kuwata was one of the officers who always complained of the plaintiffs alleged violence at her tray slot at one point attempting to jam the plaintiffs hands in the cubby hole tray slot , when it came to the new supervision instruction Officer Kuwata did not want comply. On multiple occasions the plaintiff would yell for the Sergeant or superior staff when officer Kuwata would try to interact with the plaintiff on a one on one in anyway because the plaintiff alleges Kuwata would always try to get away with abusing her.

At the plaintiffs second visit back to defendant, Parker County Jail , staff continued to mistreat the plaintiff. The plaintiff was placed in seg for no legitimate reason shortly after being held at Parker County Jail. She then remained in solitary confinement for months until she was transported to prison. During the second stay officers harassed and assaulted the plaintiff. They violated her constitutional rights by withholding mail of case law she was using to prepare for her pretrial and trial hearing.

Please take judicial notice and review ( Exhibit 16 ) a copy of the tracking details of one of the case study packages that was delivered to the jail but not given to the plaintiff.

The interference with this package and another caused the plaintiff not to be prepared for her pretrial and trial settings. To further interfere as pretrial and trial dates neared , staff members would refuse the plaintiff the phone without any disciplinary action. They would enter her cell and remove her television without cause and do anything in their power to ruin the trial or violate rights.

The plaintiff sent complaints of defendant , Parker County Jail withholding mail which ultimately pretrial and trial hearings , and accusations  that her discovery had been tampered with. The plaintiff believes defendant , Parker County Jail employees had something to do with her tampered discovery. On Friday May , 26 , 2023 a representative for the plaintiff delivered an email on her behalf.

Please take judicial notice and review ( Exhibit 17 ) the May , 26 , 2023 email sent on the behalf of the plaintiff from Denise Ruben via denise@barredbusiness.org

The email mentioned the issue of tampered discovery by saying , " I'm contacting you all to notify you that I am fully aware that my Discovery has been tampered with and or altered in numerous areas of Discovery. It is also being viewed without my consent by employees " , in " LaSalle Corrections Parker County Jail facility. You all placed LaSalle correction members in possession of my discovery which is against the law if they are viewing and exploiting access to my discovery. "

The plaintiff asserts that portions of all her discovery were blotted out with black marker when it was handed to her. For the first month or two , she was only allowed to have her discovery during the time she was at court or in the law library. When walking in and out of court the discovery was handled by defendant, Parker County Sheriff's Department and the transporter for defendant , Parker County Jail.

The email in ( Exhibit 17 ) went further to say " On May 18th 2023 at approximately 3:10p to 3:22pm Lieutenant Jarvis and AW Anderson forced me   the defendant to exit the room while cause number CR22-0248 Discovery was still in plain view. " " The discovery evidence is supposed to be locked and inaccessible to anyone without my presence or consent. They threatened that if I was not willing to walk away while Discovery was in plain view then I would be punished and any review research that I had done would be placed on my property and I would not be able to access it. These events occurred after staff ended my research / review session."

Also the plaintiff asserts that the owner of Parker County Jail. LaSalle Corrections was subpoenaed to provide all incident reports associated to the plaintiff , including surveillance and or hand held video recordings and photos. The plaintiff asserts LaSalle Corrections , defendant , Parker County Jail's operator  failed to provide all record of this information In addressing the matter in ( Exhibit 17 ) the plaintiff continued, " I also learned from AW Anderson during a visit from DA member Chawn Gilliland who at the time was providing all incident reports " , " that they , ( superior staff members) has chosen not to store the contents of cause# cr22-0248 in a safe secured place where video surveillance can document the protection of this case privacy. I'm asking the 43rd District Court to make it a responsibility to dissolve any potential threat of outside exposure to the content of cause # CR22-0248 as LaSalle Corrections does not carry the legal authority to violate in any form the defendants case privacy. "

The plaintiff expressed that she believes defendant , Parker County Sheriff's Department , defendant , Parker County Jail , and non party Parker County District Attorney's Office corroborated with one another to facilitate illegal conduct committed in regards to this case.

In the email in ( Exhibit 17 ) the plaintiffs representative stated " Furthermore AW Anderson spent 30 yrs as a Texas Sheriff which is a conflict of interest to cause# CR22-0248 and access to its discovery as the defendant is due the right to be protected from state influences and associations and any possibility of fabricating and tampering by parties partnered with and associated with he state."

Although the plaintiff complained about the vulnerability of the discovery and its handling , no adjustments were made for nearly a month.

On 06/28/2023 the plaintiff had a representative for her send out another email.

Please take judicial notice and review ( Exhibit 18 ) the 06/28/2023 email sent from Denise Ruben via denise@barredbusiness.org

The email states , " The defense would like to request a rehearing for the motion to suppress that was held on 6/20/2023 and a resetting for the motion to quash indictment and a motion for change of venue. On 5/13 2023 , the United States Postal Service confirmed delivering a first class package to Parker County Jail in Parker County , Texas to inmate number 2191431."

Please refer to ( Exhibit 16 ) the 5/13/2023 case law package delivered by United States Postal Service.

The email continued , " Apparently , on this first class package , someone signed off on it. However , the jail withheld the mail from the defendant after discovering that the package contained legal literature.  The defense was not able to properly prepare for the motion to suppress that was later denied. The defense requested LaSelle corrections provide video surveillance from Dec 3,2021 to current of the areas the defendant was located. On May , 26 , 2023 the Parker County District Attorney's Office delivered that discovery and over 99% of the video surveillance of the defendants cell hallway , and in person movement was missing on the USB ." the email continued , " The movant is requesting the package of the 5/13/2023 United States Postal Service delivered mail on Parker County Jails property be photographed and that the contents in it be

photocopied and placed into the defendants , discovery and the original package be handed to the prosecution to tender for review as evidence on behalf of the defense."

The plaintiff was disadvantaged due to not being given legal case study she had her team research, printn, and send to her priority packages similar to that in ( Exhibit 16 ). Due to these interferences by defendant , Parker County Jail and potentially defendant , Parker County Sheriff's Departmentn, the plaintiff was not prepared for trial nor was she prepared to respond to opposing counsels Motion to Limine. The plaintiff was not prepared because her means for preparation was deterred with by the defendants , et al ., Up until the trial date defendant , Parker County Jail employees repeatedly committed acts violating the plaintiffs constitutional rights. Taking the plaintiffs phone , violating her firts amendment rights and antagonizing the plaintiff violating her  sixth, eighth and fourteenth amendment rights.

During the trial , the defendant , Parker County Sheriff Department treated the plaintiff aggressively and in a way that made it known to the jury that the plaintiff was incarcerated during the time of trial. The defendant , Parker County Sheriff's Department also placed the plaintiff in a room near where the jury deliberated , the walls were very thin and those jurors were able to hear the plaintiff on the other side of the wall.

During the pretrial stages defendant , Officer Ryan Malwitz testimony was very aggressive when he was being questioned by the plaintiff. At one point he threw a temper tantrum on the witness stand at the suppression hearing. Due to Malwitz courtroom behavior , defendant , Willow Park Police Department employee Jason Spears , and defendant , Quincy Hamilton's testimony , and defendant, Parker County Sheriff's Department's treatment of the plaintiff a jury rendered the plaintiff guilty in August of 2023.

On September 6, 2023 the plaintiff was transported from defendant , Parker County Jail to defendant , Texas Department of Criminal Justice Plane State facility. Before the plaintiff departed from Parker County Jail, employees asked her to sign a sheet that acknowledged the things that were placed on her property. Those things include all the packages did not let her receive. They stated that she had so much time to retrieve the property.



..ail

PRE

U.S. POSTAGE PAID
PM
LOUISVILLE, KY 40211
FEB 20, 2026

76102

RDC 03    0 Lb 5.30 Oz    S2322W501322-18

**$11.95**

**POSTAL SERVICE ®**

MAIL

EXPECTED DELIVERY DAT:

**USPS TRACKING® #**

9505 5134 5107 6051 4973 33

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

FROM:
The Legal Room
P.O Box 11053
Lao, KY 40251

RECEIVED

FEB 2 4 2026

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the
Domestic Mail Manual at *http://pe.usps.com*.
** See International Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

To schedule free Package Pickup,
scan the QR code.

USPS.COM/PICKUP

TO:

U.S District Court
for the Northern
District of Texas
Ft. Worth Division
501 W 10th St
Room 310
Ft. Worth, TX 76102

# FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

# TRACKED ■ INSURED

PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

PAPER
POUCH

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.